```
                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF TEXAS
                             HOUSTON DIVISION


JERRY TURNER,                       §
                                    §
     Plaintiff,                     §
                                    §
v.                                  §     CIVIL ACTION NO. H-12-0446
                                    §
UNITED STATES OF AMERICA,           §
                                    §
     Defendant.                     §
```

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant's Motion to Dismiss[2] (Doc. 14). The court has considered the motion, the response,[3] the reply, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**.

### I. Case Background

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 21.

[2] Defendant contemporaneously moved for summary judgment (in the alternative). See Doc. 14, Def.'s Mot. to Dismiss. Since the filing of the motion, the court has stayed discovery pending the court's ruling on defendant's motion to dismiss. See Doc. 25, Order Dated Mar. 25, 2013.

[3] As Defendant points out, Plaintiff filed his response late. The response was due on February 15, 2013, and Plaintiff filed his response on February 19, 2013, (which was the next day that the court was open for business). Although Plaintiff requested additional time to respond to the summary judgment arguments, he did not request additional time to respond to the motion to dismiss. See Doc. 15, Pl.'s Mot. for Extension of Time; Doc. 17, Pl.'s Supplemental Mot. Pursuant to Fed. R. Civ. P. 56(d).
  According to the local rules, a response must be filed by the date of submission, or the motion will be considered unopposed. See L.Rs. 7.3, 7.4. However, as the court finds that it would be improper to dismiss this action merely because Plaintiff filed a response one business day late, the court considers the merits of Defendant's motion and Plaintiff's response. Cf. Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985)(indicating that summary judgment motions cannot be granted simply due to a lack of opposition, even when in violation of a local rule).

Plaintiff filed this medical malpractice action pursuant to the Federal Tort Claims Act,[4] alleging that David W. Krusleski, M.D., ("Dr. Krusleski") negligently allowed Plaintiff to develop pressure ulcers during a hospitalization at OakBend Medical Center ("OMC").[5]

On November 30, 2008, Dr. Krusleski admitted Plaintiff to OMC with congestive heart failure.[6] At the time, Plaintiff's medical history included obesity, congestive heart failure, atrial fibrillation, diabetes, chronic renal insufficiency, and chronic venous stasis ulcers to both lower extremities.[7] He weighed over 400 pounds.[8]

Upon assessment, the nursing staff found Plaintiff to be at high risk for the development of pressure ulcers (bedsores) because of his large size and limited mobility.[9] The staff developed a comprehensive plan to address the issue, which included turning

---

[4] See 28 U.S.C. §§ 2671-2680.

[5] See Doc. 1, Pl.'s Compl.

[6] Id. p. 2 (unnumbered). Dr. Krusleski denied any involvement in Plaintiff's care, after November 30, 2008, except providing verbal authorization for a prescription for nausea. Doc. 14-3, Ex. B to Def.'s Mot. to Dismiss, Decl. of Dr. Krusleski ¶¶ 4, 7, 8.

[7] Doc. 1, Pl.'s Compl. p. 2 (unnumbered).

[8] Id.

[9] See id.; Doc. 14-3, Ex. B to Def.'s Mot. to Dismiss, Decl. of Dr. Krusleski ¶ 3.

2

Plaintiff on a schedule of every two hours.[10] The OMB wound care team performed an initial assessment and ordered a bariatric[11] bed for Plaintiff on the day after his admission.[12] Seven days later, a stage I pressure ulcer on his buttocks was first noted in the medical record.[13]

The staff treated the ulcer with intravenous antibiotics, and the wound care team recommended cleansing the compromised area with saline, patting it dry, and changing the dressing every other day as needed.[14] Nevertheless, the ulcer grew in circumference and intensified to stage II.[15] By December 12, 2008, Plaintiff had two pressure ulcers, one on each buttocks.[16] Both were evaluated as stage II on December 15.[17]

On December 16, 2008, Plaintiff was admitted to the skilled nursing facility at OMC.[18] According to measurements taken on

---

[10] Doc. 14-3, Ex. B to Def.'s Mot. to Dismiss, Decl. of Dr. Krusleski ¶ 3.

[11] The bariatric bed was ordered "to accommodate his size and to minimize the risk of a breakdown in skin integrity and pressure ulcer development." Id. ¶ 5.

[12] Id.; Doc. 1, Pl.'s Compl. p. 3.

[13] Doc. 1, Pl.'s Compl. p. 3; Doc. 14-3, Ex. B to Def.'s Mot. to Dismiss, Decl. of Dr. Krusleski ¶ 6.

[14] Doc. 14-3, Ex. B to Def.'s Mot. to Dismiss, Decl. of Dr. Krusleski ¶ 6.

[15] Doc. 1, Pl.'s Compl. p. 3.

[16] Id.

[17] Id.

[18] Id.

December 18, 2008, the two pressure ulcers had increased in size to a size of approximately four inches by six inches.[19]  Plaintiff was discharged from OMC on December 22, 2008.[20]  The medical records indicate that, upon discharge, Plaintiff was given wound dressings and a prescription for pain medication and was instructed to follow up with the outpatient wound care department at Fort Bend Family Health Center ("FBFHC").[21]  However, Plaintiff did not seek treatment at FBFHC as instructed.[22]

About two weeks later, Plaintiff was readmitted to OMC.[23]  Upon admission, the medical staff noted that the pressure ulcers were necrotic and infected.[24]  The medical staff determined that the ulcers were at stage III and IV.[25]  The medical staff treated Plaintiff with intravenous antibiotics, performed multiple

---

[19]   Id.

[20]   Id.  Plaintiff's complaint states that he was discharged "to home without *inpatient* wound care." Id. (emphasis added)(quoting, without citing, the expert report of David Mansfield, which can be found at Doc. 14-9, Ex. H to Def.'s Mot. to Dismiss, David Mansfield Expert Report p. 3).  Perhaps he meant *outpatient* wound care; either way, the expert's statement contradicts Dr. Krusleski's reading of the medical record.  Compare Doc. 14-3, Ex. B to Def.'s Mot. to Dismiss, Decl. of Dr. Krusleski ¶ 9 with Doc. 14-9, Ex. H to Def.'s Mot. to Dismiss, David Mansfield Expert Report p. 3.

[21]   Doc. 14-3, Ex. B to Def.'s Mot. to Dismiss, Decl. of Dr. Krusleski ¶¶ 6, 9.

[22]   Id.

[23]   Doc. 1, Pl.'s Compl. p. 3.

[24]   Id.

[25]   Id.

4

debridements[26] and a myocutaneous[27] flap closure, and employed vacuum-assisted closure therapy[28] (VAC) on the wounds.[29] Plaintiff was discharged on May 5, 2009, with continuing care at the OMC Wound Care Center.[30] The wound was completely healed by October 13, 2009.[31]

According to Plaintiff, he was incapable of asking what had happened to him in the hospital until after the surgeries, "sometime in mid to late January" 2009.[32] He attributed his inability during and after his hospitalization to understand that he had pressure ulcers to being very sick, having cloudy judgment, feeling immense pain, and being "in a fog because of all the medications, difficulty breathing, and the oxygen."[33] Plaintiff's wife agreed under oath that Plaintiff "was very sick, heavily medicated, and unable to care for himself" and that he "could not

---

[26]   A debridement is "the surgical removal of lacerated, devitalized, or contaminated tissue." Merriam-Webster's Medical Dictionary, 161 (1995).

[27]   Myocutaneous, or musculocutaneous, means "of, relating to, supplying, or consisting of both muscle and skin." Id. at 439; The Free Dictionary, http://medical-dictionary.thefreedictionary.com/myocutaneous.

[28]   Also known as negative-pressure wound therapy, VAC therapy uses subatmospheric pressure to promote healing. See Patrice Wendling, *Vacuum-assisted Wound Therapy Uses Expanded*, Skin & Allergy News, April 2008, at 47.

[29]   Doc. 1, Pl.'s Compl. pp. 3-4 (partially unnumbered).

[30]   Id. p. 4 (unnumbered).

[31]   Id.

[32]   Doc. 18-4, Ex. 3 to Pl.'s Resp. to Def.'s Mot. to Dismiss, Pl.'s Aff. ¶ 5 (unnumbered).

[33]   Id. ¶¶ 4, 5 (unnumbered).

appreciate the circumstances surrounding his health."[34] She said Plaintiff slept most of the time at home between hospitalizations and was "out of it" when he was awake.[35]

On December 27, 2010, Plaintiff submitted via mail an administrative tort claim, alleging that Dr. Krusleski failed to meet the applicable standard of care for a health care facility during Plaintiff's initial hospital stay by failing, inter alia: 1) to promptly provide a bed of the appropriate size; 2) to reposition Plaintiff when at risk for the development of pressure ulcers; 3) to promptly provide pressure redistributing support surfaces; 4) to implement preventive measures to abate the deterioration of the pressure ulcers; 5) to promptly order wound treatment when the pressure ulcers reached stage II; and 6) to provide at discharge appropriate patient or family education for wound care.[36]

The Department of Health and Human Services ("DHHS") received the claim on December 29, 2010, and issued a denial letter on August 16, 2011.[37] DHHS found that "[t]he evidence fail[ed] to establish that the alleged injuries [were] due to the negligent or wrongful act or omission of a federal employee acting within the

---

[34] Doc. 18-3, Ex. 2 to Pl.'s Resp. to Def.'s Mot. to Dismiss, Jennifer Turner's Aff. ¶ 5 (unnumbered).

[35] Id.

[36] See Doc. 14-4, Ex. C to Def.'s Mot. to Dismiss, Administrative Tort Claim.

[37] See Doc. 14-6, Ex. E to Def.'s Mot. to Dismiss, Letter from DHHS to Pl.'s Counsel Dated Aug. 16, 2011.

scope of employment."[38]  Dissatisfied with DHHS's determination, Plaintiff timely filed suit in this court on February 15, 2012.[39]

Defendant answered in May 2012 and filed the pending motion to dismiss in January 2013.[40]  Therein, Defendant coupled the motion to dismiss with a motion for summary judgment (in the alternative).[41]  Plaintiff responded to the motion to dismiss in February but requested additional time for discovery before responding to the motion for summary judgment.[42]  The court allowed Plaintiff additional time for discovery but, later, stayed discovery pending a ruling on the motion to dismiss.[43]  The court now addresses the motion to dismiss.

## II.  Dismissal Standard

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).  The party asserting jurisdiction bears the burden of proof that jurisdiction does exist.  In re FEMA Trailer Formaldehyde Prods. Liab. Litig.

---

[38]   Id.

[39]   See id.; Doc. 1, Pl.'s Compl.

[40]   See Doc. 6, Answer; Doc. 14, Def.'s Mot. to Dismiss.

[41]   See Doc. 14, Def.'s Mot. to Dismiss.

[42]   See Doc. 15, Pl.'s Mot. for Extension of Time; Doc. 17, Pl.'s Supplemental Mot. Pursuant to Fed. R. Civ. P. 56(d); Doc. 18, Pl.'s Resp. to Def.'s Mot. to Dismiss.

[43]   See Doc. 22, Order Dated Mar. 7, 2013; Doc. 25, Order Dated Mar. 25, 2013.

[hereinafter In re FEMA], 646 F.3d 185, 189 (5th Cir. 2011)(citing Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming, 281 F.3d at 161 (citing Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)). The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

### III. Analysis

The FTCA waives sovereign immunity for certain tort suits but bars any claim that either is not "presented in writing to the appropriate Federal agency within two years after such claim accrues" or is not filed with the appropriate court within six months after the date on which the agency's final denial is mailed. 28 U.S.C. § 2401(b); see also In re FEMA, 646 F.3d at 189 (citing 28 U.S.C. §§ 2401(b), 2675(a)). Because the FTCA embodies a waiver of sovereign immunity, the failure to meet either statutory deadline deprives this court of jurisdiction. See In re FEMA, 646

F.3d at 189, 190; Ramming, 281 F.3d at 165; MacMillan v. United States, 46 F.3d 377, 380 n.3 (5th Cir. 1995).

The accrual of a claim under the FTCA is subject to the discovery rule. In re FEMA, 646 F.3d at 190 (citing United States v. Kubrick, 444 U.S. 111, 123 (1979)). In Kubrick, 444 U.S. at 122, the United States Supreme Court noted that an injury may be unknowable until it manifests itself and facts about causation may be difficult for the potential plaintiff to obtain. Thus, the statute of limitations is delayed until the "patient discovers or in the exercise of reasonable diligence should discover his injury and its cause." MacMillan, 46 F.3d at 381 (quoting Harrison v. United States, 708 F.2d 1023, 1027 (5th Cir. 1983)). The Fifth Circuit further explained the causation aspect:

> [T]he limitations period begins to run when the plaintiff has 'knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury.'

Id. (quoting Harrison, 708 F.2d at 1027).

It is unnecessary that the potential plaintiff suspect negligence before the limitations period begins to run. See Kubrick, 444 U.S. at 124. The potential plaintiff bears the affirmative duty to "proceed with a reasonable investigation in response to an adverse event." Ramming, 281 F.3d at 163 (quoting Pacheco v. Rice, 966 F.2d 904, 907 (5th Cir. 1992)).

9

> A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute which is to require the reasonably diligent presentation of tort claims against the Government.

Kubrick, 444 U.S. at 123.

Defendant contends that Plaintiff did not file his administrative complaint until more than two years after the alleged acts or omissions of Dr. Krusleski during Plaintiff's hospitalization from November 30, 2008, to December 22, 2008. Plaintiff agrees that the acts and omission of which he complains occurred between November 30, 2008, and December 22, 2008, but argues that his poor health condition and the side effects of his prescribed medications prevented him from discovering the facts that led to his injury. Thus, he insists, the discovery rule should apply to delay accrual of his claim until sometime in January 2009, when he was able to comprehend all that had occurred in late 2008.

The only issue presently before the court is whether Plaintiff filed his administrative complaint within two years after the accrual of his claim. Clearly, he did not file within two years of his alleged injury. He complains of the medical care he received up to and through December 22, 2008, but did not file his

administrative complaint until December 29, 2010.[44]  The more precise issue, then, is whether he, in the exercise of reasonable diligence, should have discovered his injury and its cause more than two years before he filed his administrative complaint.

The Fifth Circuit has pondered similar questions.  For example, in MacMillan, 46 F.3d at 377, the court considered a malpractice case brought by a mother on behalf of her daughter for injuries sustained by the child during birth.  The court determined that the claim accrued, at the latest, when a psychologist who examined the child to determine the causes of her developmental and neurological problems concluded that she probably sustained neurological damage at birth.  Id. at 381.  A reasonable person who is armed with that information, the court stated, would be compelled to seek professional advice regarding the child's neurological problems and the connection, if any, to the difficulties experienced at birth.  Id.

In a more recent case, the Fifth Circuit addressed another mother's claim that her son was injured by exposure to high levels of formaldehyde while living in an emergency housing unit ("trailer") provided by the Federal Emergency Management Agency (FEMA).  In re FEMA, 646 F.3d at 187-88.  When the family moved into the trailer, the mother almost immediately noticed a chemical

---

[44] A complaint is filed when the DHHS receives it.  See 28 C.F.R. § 14.2(a).

smell and observed her son's worsening asthma, as well as the manifestation of other symptoms. Id. at 188. At that point, the court determined, the mother possessed sufficient knowledge to lead a reasonable person to further investigate the specific cause of the son's physical ailments. Id. at 190. The court found that the discovery rule did not apply to the mother's FTCA claim. Id.

As with the above cases, Plaintiff had information, more than two years prior to the filing of his administrative claim, that would have led a reasonable person to seek professional advice and, with that advice, determine whether a cause of action existed. The manifestation of Plaintiff's injury was immediate and its cause should have been obvious to Plaintiff, as well as to his wife.

Plaintiff developed pressure ulcers (i.e., open sores) within eight days of his hospitalization. Those ulcers worsened over the course of his inpatient treatment until they were several inches in diameter and located on both buttocks. The administration of and prescription for pain medications indicate that the pressure ulcers were painful. The court does not find it credible that Plaintiff was completely unaware of the presence of the painful wounds. See Krim, 402 F.3d at 494 (granting courts the authority to weigh evidence in deciding a motion to dismiss based on subject matter jurisdiction).

The cause was as obvious as the injury. The medical staff, through its actions, essentially admitted that a special treatment

plan for Plaintiff was required to avoid pressure ulcers. They evaluated Plaintiff for pressure ulcers upon admission, ordered a special bed to facilitate turning, ordered regular turning, called in the wound care team, treated him with antibiotics after the pressure ulcers developed, and discharged him with instructions to return for follow-up care. Whether the medical staff acted negligently is not the issue here, only whether Plaintiff should have had knowledge of sufficient facts[45] to put a reasonable person on notice of a potential cause of his injury.

Armed with the information that was available to Plaintiff no later than December 22, 2008,[46] a reasonable person would have made appropriate inquiries from professionals to ascertain whether he had a claim. Therefore, Plaintiff's claim accrued no later than December 22, 2008. In order to prosecute this tort claim, Plaintiff needed to have filed his administrative complaint no later than December 22, 2010. He did not meet that deadline, and, therefore, his lawsuit should be dismissed.[47]

## IV. Conclusion

---

[45] The court notes that this was not a situation in which the treatment providers deliberately withheld facts about Plaintiff's injury or its cause, which could justify tolling of the limitations period. Cf. Kubrick, 444 U.S. at 120 (noting that facts about causation may be in the hands of the defendant and difficult for a plaintiff to obtain).

[46] The court need not establish whether Plaintiff knew sufficient facts prior to his discharge for accrual because he did not meet the deadline with regard to the finding that his claim accrued no later than December 22, 2008.

[47] The court need not reach the merits of whether the alleged acts were negligent or whether Dr. Krusleski was responsible for the acts that caused Plaintiff injury.

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 9th day of May, 2013.

Nancy K. Johnson
United States Magistrate Judge